[Cite as *State v. Crowder*, 2026-Ohio-1474.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| STATE OF OHIO | : |
| | : C.A. No. 30560 |
| Appellee | : |
| | : Trial Court Case No. 2022 CR 03407/2 |
| v. | : |
| | : (Criminal Appeal from Common Pleas |
| ROBERT CROWDER JR. | : Court) |
| | : |
| Appellant | : **FINAL JUDGMENT ENTRY &** |
| | : **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on April 24, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
RONALD C. LEWIS, PRESIDING JUDGE

TUCKER, J., and HANSEMAN, J., concur.

MONTGOMERY C.A. No. 30560

CHRISTOPHER BAZELEY, Attorney for Appellant
ANDREW T. FRENCH, Attorney for Appellee

LEWIS, P.J.

{¶ 1} Defendant-appellant Robert Crowder, Jr., appeals from his convictions following a jury trial in the Montgomery County Common Pleas Court. For the following reasons, we affirm the judgment of the trial court.

## I. Facts and Course of Proceedings

{¶ 2} This appeal involves Crowder's conviction for trespassing in a habitation owned by J.C. on Indianola Avenue in Dayton, Ohio ("the Indianola Property"). On January 31, 2024, a Montgomery County grand jury indicted Crowder on one count of trespass in a habitation, a fourth-degree felony in violation of R.C. 2911.12(B); one count of breaking and entering, a fifth-degree felony in violation of R.C. 2911.13(A); and one count of forgery (elderly person), a fourth-degree felony in violation of R.C. 2913.31(A)(2). The indictment stated that the trespass in a habitation and breaking and entering counts involved Crowder's actions on or about July 8, 2022. Crowder pleaded not guilty to all counts.[1]

{¶ 3} On April 2, 2025, a Montgomery County grand jury indicted Crowder on one count of tampering with records, a third-degree felony in violation of R.C. 2913.42(A)(1); one count of false representation as an attorney, a first-degree misdemeanor in violation of R.C. 4705.07(A)(1); and one count of false representation as an attorney/unauthorized practice of law, a first-degree misdemeanor in violation of R.C. 4705.07(A)(2).

---

1. The January 31, 2024 indictment also included charges against Dorrick Conner and The Village DBA Irrevocable Trust, but those charges are not at issue in this appeal and are not further discussed in this opinion.

2

**{¶ 4}** On July 6, 2025, the State filed its bill of particulars. Among other things, the bill of particulars provided that (1) from June 15, 2022, to June 17, 2022, Crowder forged a warranty deed relating to property owned by J.C.; (2) on or about June 17, 2022, Crowder submitted a forged warranty deed for recording; and (3) on or about June 17, 2022, Crowder submitted a real property conveyance form listing J.C. as a grantor.

**{¶ 5}** A jury trial on the six counts in the two indictments was held in July 2025. Dorrick Conner testified first for the State. Conner was a self-employed auto mechanic who had known Crowder since they were children. Crowder told Conner that he was an attorney and that they could acquire abandoned houses in Dayton through adverse possession. Crowder explained to Conner that they did not need to acquire the properties through a foreclosure proceeding because "we're neighbors of the city." Tr. 215-216.

**{¶ 6}** As part of their plan to acquire abandoned houses, Conner paid the delinquent property taxes owed on the Indianola Property. Conner and Crowder moved into the Indianola Property and began making repairs to the house. Conner testified that J.C. came to the Indianola Property while Conner and Crowder were living there. J.C. called the police, but the police asked J.C. to leave. Conner and Crowder subsequently were evicted from the Indianola Property. Crowder told Conner that the eviction was illegal and they were being "human trafficked." Tr. 226.

**{¶ 7}** Conner spent about $45,000 on back taxes and $6,000 on utilities for properties that Crowder told them they could acquire through adverse possession. Conner considered Crowder his legal advisor throughout the process. Crowder prepared all the paperwork and Conner signed it. Relating to the paperwork for the Indianola Property, Crowder listed himself as the trustee of J.C., which was based on J.C.'s "implied consent." Tr. 214.

3

**{¶ 8}** Kimberly DeLong also testified for the State. She was a Detective Sergeant with the Trotwood Police Department. DeLong interviewed Crowder and Conner on July 14, 2022, and a video recording of the interview was played for the jury. She did not believe Crowder was an attorney, and once it was determined that Crowder was not the owner of the Indianola Property, she referred the case to the county to consider bringing criminal charges against him.

**{¶ 9}** Jennifer Connelly, the supervisor of tax delinquency at the Montgomery County Treasurer's Office, testified that anyone can make a real estate property tax payment on the County Treasurer's website. However, she explained that the payment of property taxes by someone who does not own a property does not change ownership of the property. While an owner of a property makes payments toward a delinquent balance under a payment plan, the owner is protected against a tax foreclosure proceeding or the sale of a tax lien. On June 15, 2022, Conner paid off the remaining $7,113.91 that was owed in delinquent property taxes on the Indianola Property. At the time Conner paid the taxes, the owner of the Indianola Property (J.C.) was current on a payment plan that had started in March 2020.

**{¶ 10}** J.C. testified that he was 74 years old at the time of the hearing and was a retired real estate appraiser who currently owned and maintained 27 rental properties. He had owned the Indianola Property since 2010, when he bought it for approximately $18,000. He had previously rented out the house on the Indianola Property, but it had been vacant since his last tenants moved out sometime in 2020. Once his last tenants moved out, J.C. could not afford the necessary repairs on the property, and he fell behind in paying his property taxes. He set up a payment plan to make payments toward the outstanding property taxes.

4

{¶ 11} In 2022, J.C. planned to make repairs on the Indianola Property and sent an electrician to the property to verify that the electricity was in working condition. J.C. needed to do this as the first step toward applying for the necessary permits to make repairs on the house. The electrician went to the Indianola Property on July 8, 2022, and discovered that somebody was living there. When asked whether he went to the Indianola Property on July 8 after receiving the call from his electrician, J.C. testified, "If not that day, in the next couple days." Tr. 317.

{¶ 12} When J.C. arrived at the property, he found Crowder and Conner living there, and they told him that it was their house. J.C. testified that he never gave Crowder permission to enter the Indianola Property or to act as his trustee, and he never gave Crowder a power of attorney. While speaking with Crowder at the house, J.C. offered to sell the house to Crowder. J.C. then called the police but was told that it was a civil matter. J.C. subsequently regained possession of the Indianola Property through the civil eviction process. Crowder sued J.C. to recover money for repairs that had been done to the property, but the court awarded J.C. $35,000, which Crowder had not paid.

{¶ 13} Tyson Dillon, a criminal investigator for the Montgomery County Prosecutor's Office, testified for the State as well. Part of his job duties included investigating financial crimes and fraud. He began his investigation into the Indianola Property when Connelly notified him in 2022 of some unusual payments on delinquent taxes received by the Montgomery County Treasurer. Dillon discovered that Conner had paid off back taxes on three properties. Dillon researched the Indianola Property and located a deed transferring the Indianola Property from J.C. to Crowder. Dillon met with Conner in December 2024, at which time Conner provided Dillon with some documents, including a power of attorney and

5

a declaration of tax representative. As part of his investigation, Dillon also searched for any record of Crowder being a licensed attorney but was unable to find any such record.

{¶ 14} Crowder waived his right against self-incrimination and testified at his trial. He stated that he was a "federal attorney" and had successfully represented many individuals at the Noble Correctional Institution. Crowder testified that he had attorney bar numbers in Florida, Washington, and West Virginia. He stated that he did not have to go to law school to become an attorney. Crowder represented that he had made over three million dollars in North Carolina and Florida using the nuisance abatement process and was not a con man.

{¶ 15} Crowder explained what he fixed at the Indianola Property and why it was obvious that the property was not occupied when he moved in:

We noticed a property had -- it was a good prospect. It was a lot of code violations. It was a hole in the roof. The doors were -- and windows were either broken out or not secured. There were dead animals throughout inside and outside the property. Trash. Black mold from the basement almost all the way to the third floor. We had to completely renovate and -- and take out all of that just to make it habitable. There was no way possible anyone could have occupied that structure before we got there. The black mold would have killed them. That alone. So for anyone to lead you to believe that we thought we were taking someone else's property, that's not true. We knew it was previously owned by someone, but it was in a abandoned state in accordance with 2308.02 of the Ohio Revised Code.

. . .

6

There's no possible way I could have been sitting there foreseeing that someone would interfere in a lawful abatement of a nuisance in the neighborhood. It was obvious that these properties were not occupied. Obvious. And at the time that we received notice that anybody had a interest that they were trying to protect, before we got into the property, we backed off. No one let us know anything until after. When Tyson Dillon contacted me, we had already got rid of all of the mold. We had already fixed the roof. We had already fixed all the windows and doors. We had already secured our investment.

Tr. 389-390.

{¶ 16} Crowder conceded that he had never received explicit consent from J.C. to sign anything on his behalf, but Crowder believed that he had implied consent to do so. Crowder did not pay J.C. any money after Crowder lost his civil suit against J.C.

{¶ 17} The jury found Crowder guilty as charged on all six counts contained in the two indictments. At the sentencing hearing, the trial court merged for purposes of sentencing the trespass in a habitation and the breaking and entering convictions, and the State elected sentencing on the trespass in a habitation conviction. The trial court did not merge any other convictions. Crowder neither asked that any other convictions be merged nor objected to the trial court's decision to not merge any other convictions.

{¶ 18} The trial court sentenced Crowder to 18 months in prison for trespass in a habitation, 12 months in prison for forgery (elderly/disabled), 36 months in prison for tampering with records (government), 180 days in jail for false representation as an attorney, and 180 days in jail for false representation as an attorney/unauthorized practice of law. The court ordered the prison sentences to be served consecutively to each other and the

7

jail sentences to be served concurrent with both each other and the felony sentences. Crowder's total prison sentence was 66 months. Crowder filed a timely notice of appeal from the trial court's judgment.

## II. Crowder's Trespass in a Habitation Conviction Is Supported by Sufficient Evidence and Is Not Against the Manifest Weight of the Evidence

{¶ 19} Crowder's first assignment of error states:

CROWDER'S CONVICTION FOR TRESPASS IN A HABITATION IS AGAINST THE WEIGHT OF THE EVIDENCE AND BASED UPON LEGALLY INSUFFICIENT EVIDENCE.

{¶ 20} Whether the evidence presented at trial is legally sufficient to sustain a conviction is a question of law that an appellate court reviews de novo. *State v. Groce*, 2020-Ohio-6671, ¶ 7, citing *In re J.V.*, 2012-Ohio-4961, ¶ 3. "To resolve a sufficiency challenge, we must determine 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. McKelton*, 2016-Ohio-5735, ¶ 325, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. An appellate court does not engage in a determination of witnesses' credibility when reviewing the sufficiency of the evidence. *State v. Goff*, 82 Ohio St.3d 123, 139 (1998), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Nor does an appellate court assess whether the evidence admitted at trial should be believed but, rather, if believed, whether the evidence "would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. "We will not disturb the verdict unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273.

8

**{¶ 21}** Crowder was convicted of trespass in a habitation in violation of R.C. 2911.12(B), which provides, "No person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." Criminal trespass is defined in R.C. 2911.21(A)(1) as to "[k]nowingly enter or remain on the land or premises of another" without privilege to do so. On appeal, Crowder challenges only whether the State proved beyond a reasonable doubt that any person was present or likely to be present at the Indianola Property when he trespassed there. Crowder argues that "[t]he evidence was overwhelming that the Indianola property was abandoned and that there was no objective reason to believe anyone was likely to be present." Appellant's Brief, p. 4. Crowder further argues that the property was unoccupied when Crowder and Conner found it and that the State failed to prove that anyone was present at the time Crowder and Conner moved into the property.

**{¶ 22}** The State responds that it does not matter whether anyone was present when Crowder first began living at the Indianola Property because the trespass in a habitation charge was not based on his initial trespass. "The likely to be present element was not the theory under which Crowder was convicted, it was the present element." Appellee's Brief, p. 11. According to the State, "Crowder was trespassing in this habitation while people were present. On or about July 8, 2022, an electrician sent by J.C. was present at the property while Crowder was trespassing and a few days later Crowder was still trespassing while J.C. was present." *Id.* at 12.

**{¶ 23}** Several appellate districts have considered and rejected Crowder's argument that a defendant can only be convicted under the burglary statute if a person was present or likely to be present when the defendant *first* entered the property of another. As the Eighth

9

District has held, "the 'trespass' element of burglary can constitute more than the initial entry and the trespass continues throughout the duration of the offense." *State v. Davis*, 2004-Ohio-1908, ¶ 16 (8th Dist.), citing *State v. Fontes*, 87 Ohio St.3d 527, 530 (2000), and *State v. Powell*, 59 Ohio St.3d 62, 63 (1991). Therefore, when a person arrives at a property while a defendant is trespassing there, the trespassing offense may be converted into a burglary offense. *State v. Scurry*, 2011-Ohio-2243, ¶ 10 (9th Dist.); *State v. Fairrow*, 2004-Ohio-3145, ¶ 28 (4th Dist.) ("[A] burglary conviction may stand if, during anytime that the defendant is trespassing, a person enters the premises."); *State v. Rosas*, 2024-Ohio-2522, ¶ 27-28 (3d Dist.); *Davis* at ¶ 16.

**{¶ 24}** Based on our review of the record, we conclude that the State provided sufficient evidence to prove that a person other than Crowder and Conner was present at the Indianola Property on or about July 8, 2022, while Crowder was trespassing. J.C. testified that he planned to make repairs on the house at the Indianola Property and sent an electrician there to verify that the electricity was in working condition. J.C. needed to do this as the first step toward applying for the necessary permit to make repairs on the house. The electrician went to the Indianola Property on July 8, 2022, and discovered that Crowder was living there. When asked whether he went to the Indianola Property on July 8 after receiving the call from his electrician, J.C. testified, "If not that day, in the next couple days." Tr. 317. Conner confirmed that J.C. came to the Indianola Property while Crowder was living there. Based on the testimony of Conner and J.C., any rational trier of fact could have found that the State had proven beyond a reasonable doubt that a person other than Crowder and Conner was present at the Indianola Property on or about July 8, 2022, when Crowder was trespassing. While no person other than Crowder and his accomplice were present when Crowder first entered the Indianola Property, Crowder remained on the

10

Indianola Property after the electrician and J.C. arrived at the property. The evidence was sufficient to support the conviction of trespass in a habitation in violation of R.C. 2911.12(B).

{¶ 25} We also conclude that Crowder's conviction for trespass in a habitation is not against the manifest weight of the evidence. In contrast to a sufficiency challenge, the weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 1997-Ohio-52, ¶ 24, citing *Black's Law Dictionary* (6th Ed. 1990). "A reviewing court considering a manifest-weight claim 'review[s] the entire record, weighs the evidence and all reasonable inferences, [and] considers the credibility of witnesses.'" *State v. Group*, 2002-Ohio-7247, ¶ 77, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A case should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at ¶ 25, quoting *Martin* at 175.

{¶ 26} The jury heard testimony relating to Crowder's scheme to obtain ownership of properties in Dayton by first having Conner pay delinquent taxes owed on the properties. Crowder then recorded deeds with the Montgomery County Recorder's Office that purported to show a transfer of those properties from the owners to Crowder. As part of the scheme, Crowder and Conner moved into the Indianola Property. Neither of them had received permission from J.C. to move into his property or to transfer the property to them. J.C. testified that he had rented the Indianola Property to tenants as recently as 2020 and planned to do it again in 2022 after he made the required repairs to the property. On July 8, 2022, as part of his plan to rent the property again, J.C. sent an electrician to the Indianola Property. When the electrician arrived at the property, he discovered that Crowder was trespassing. Despite the presence of the electrician, Crowder remained at the property.

11

After speaking with the electrician, J.C. went to the Indianola Property on either July 8 or a couple of days later. Once again, after J.C. arrived at the Indianola Property, Crowder remained there. This evidence established beyond a reasonable doubt that Crowder criminally trespassed in the Indianola Property when someone other than Crowder and his accomplice were present at the property. We cannot conclude that this is the exceptional case where the evidence weighs heavily against a conviction.

**{¶ 27}** The first assignment of error is overruled.

### III.   The Trial Court Did Not Commit Plain Error by Failing to Merge the Forgery and Tampering with Records Convictions at Sentencing

**{¶ 28}** Crowder's second assignment of error states:

THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE CROWDER'S CONVICTIONS FOR FORGERY AND TAMPERING WITH RECORDS.

**{¶ 29}** Article I, Section 10 of the Ohio Constitution prohibits multiple punishments for the same offense. This prohibition is codified at R.C. 2941.25, which states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

12

{¶ 30} "'[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?'" *State v. Earley*, 2015-Ohio-4615, ¶ 12, quoting *State v. Ruff*, 2015-Ohio-995, ¶ 31. "'An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.'" *Id.*, quoting *Ruff* at ¶ 31. As to the question of import and significance, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23.

{¶ 31} Crowder contends that the merger issue raised in this assignment of error was preserved when the trial court sua sponte merged Crowder's convictions for breaking and entering and trespass in a habitation but failed to consider merging any of the other counts. As the State points out, however, "there is nothing in the record showing that Crowder objected to the trial court's pronouncement that it was only going to merge his convictions for breaking and entering and trespass in a habitation." Appellee's Brief, p. 12, citing Tr. 511-519.

{¶ 32} "An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 2015-Ohio-2459, ¶ 3. "Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus;

13

absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶ 33} The record-tampering statute provides, "No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:   (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record."   R.C. 2913.42(A)(1).   The forgery statute provides, "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:   (2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed."   R.C. 2913.31(A)(2).

{¶ 34} Crowder contends that the forgery and tampering with government records convictions should have been merged because "[o]ne offense cannot be committed without the other."   Appellant's Brief, p. 7.   According to Crowder, (1) both convictions were based on the deed to the property that Crowder drafted; (2) drafting the deed and filing it were of similar import and committed simultaneously because the indictment alleges that Crowder both forged the deed and filed it with the recorder on June 17, 2022; (3) Crowder's ultimate motivation was to attempt to have the property placed in his name, which can only be done by forging a deed and filing it; and (4) "the forging of the deed and filing it with the recorder must be done with the same animus:   obtaining possession of the Indianola property."   *Id.* at 7-8.

{¶ 35} The State responds that the trial court did not err in failing to merge the forgery and tampering with records convictions because the victims were different.   J.C. was the victim of the forgery count, and the government was the victim of the tampering with records

14

count. The State further argues that the two convictions should not have been merged because the forgery offense was completed before the tampering with records offense occurred. According to the State, "the forgery was completed when the documents were drafted. Crowder was not charged with uttering the forgery but instead forging the document itself. After the forgery was complete, the document was taken to the Auditor's Office and filed, thereby committing tampering with records." Appellee's Brief, p. 17-18.

{¶ 36} We cannot conclude that the trial court committed plain error in failing to merge the tampering with records and forgery convictions at sentencing because the offenses involved separate victims. The victim in the forgery offense was J.C., an elderly person. However, when Crowder recorded the deed and the property transfer form, he committed fraud as to the government office that oversaw recording property transfer documents. Therefore, the county government was a victim of the tampering with records offense. *See State v. Delaney*, 2025-Ohio-16, ¶ 17 (5th Dist.) (holding that forgery (identity fraud) and attempted tampering with government records offenses should not merge because there were two victims in the case, the person who lost her benefits and the Department of Family and Job Services); *State v. Jarrell*, 2019-Ohio-1356, ¶ 14 (8th Dist.) (holding that the trial court did not commit plain error by failing to merge the attempted tampering with records and identity fraud counts where appellant had caused harm to the police department and his brother). The forgery and tampering with records offenses are not allied offenses of similar import, and the trial court did not commit plain error by failing to merge the two convictions for purposes of sentencing.

{¶ 37} The second assignment of error is overruled.

IV. **Conclusion**

{¶ 38} Having overruled the assignments of error, the judgment of the trial court is

affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.